UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SPIRIT & SANZONE DISTRIBUTORS CO., INC., and
SALAMANCA-AREA BEVERAGE COMPANY INC.,

                    Plaintiffs,

   -  against –

COORS BREWING COMPANY,

                    Defendant.
-----------------------------------------------------------------x

_____ CV _____

**COMPLAINT**

JUDGE STANTON

08 CV 0251

Plaintiffs Spirit & Sanzone Distributors Co., Inc., and Salamanca-Area Beverage Company, Inc., by its attorneys Ettelman & Hochheiser, P.C., for their Complaint allege as follows:

## SUMMARY OF ACTION

1. This action seeks to prevent Defendant, a brewer, from unlawfully terminating its agreements with Plaintiffs as distributors of Molson beer products based upon a purported national policy of consolidation, which was implemented by another brewer, namely Molson USA, LLC. Because the relationship between Plaintiffs and Defendant involves the sale of beer, ("ABC") is expressly governed by Section 55-c of the New York Alcoholic Beverage Control Law, a remedial statute designed to level the playing field by and between brewers and wholesalers. Pursuant to Section 55-c, a distribution agreement between a brewer and a wholesaler can only be terminated based on "good cause" as defined by the statute. The definition of "good cause" is exceedingly narrow, limited essentially to (i) the implementation by a brewer of a national or regional policy of consolidation that is "reasonable, non-discriminating, and essential," to the brewer and (ii) the failure to comply with a material term of the distribution

agreement after notice and an opportunity to cure. ABC §55-c(2)(e).

2. In an attempt to effectuate the termination of Plaintiffs as distributors of Molson products, on December 11, 2007, Defendant commenced two separate arbitrations before the American Arbitration Association alleging that it can terminate Plaintiffs based upon a consolidation policy that Defendant adopted from a dissolved brewer, Molson USA LLC. However, because there is no valid agreement to arbitrate this dispute, and Plaintiffs have not agreed to arbitrate this dispute, Plaintiffs seek an order from this Court (i) declaring, among other things, that Defendant's attempt to terminate Plaintiffs' distribution agreements are unlawful because Defendant is not implementing a national plan of consolidation that is reasonable, non-discriminatory and essential to this Defendant's business, as required by Section 55-c; and (ii) permanently staying the arbitrations commenced by Defendant.

## THE PARTIES

3. Plaintiff Spirit & Sanzone Distributors Company, Inc. ("Sanzone"), is a New York corporation with its principal place of business located in Onondaga County, New York.

4. Plaintiff Salamanca-Area Beverage Company, Inc. ("Salamanca"), is a New York corporation with its principal place of business located in Cattaraugus County, New York.

5. Sanzone and Salamanca are duly licensed, multi-brand distributors of alcoholic and non-alcoholic beverage products within the State of New York.

6. Upon information and belief, defendant Coors Brewing Company ("Coors") is a Delaware corporation with its principal place of business located in Jefferson County, Colorado.

7. Upon information and belief, Coors is a brewer, seller, and importer of beer products within the State of New York.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2), because plaintiffs are citizens of New York and Coors is deemed a citizen of Delaware or Colorado, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

9. Venue lies in this District pursuant to 28 U.S.C. §1391(a)(2) and (a)(3), and 28 U.S.C. §1391(c).

## PLAINTIFFS' RELATIONSHIP WITH MOLSON/COORS

10. Sanzone has been a Molson distributor for over twenty years, having been granted the exclusive right to distribute Molson products in the State of New York, the counties of Cortland, Fulton, Herkimer, Madison, Montgomery, Oneida, Onondaga and Schoharie, and portions of Hamilton and Lewis County in 1986 pursuant to a distribution agreement with Martlet Importing Co., Inc., a former U.S. importer of Molson products ("Martlet").

11. Salamanca became a distributor of Molson products in 1995 when Salamanca was granted the exclusive right to distribute Molson products in the State of New York in a portion of Cattaraugus County from Martlet. Thereafter, in 1997, Salamanca was granted the exclusive right to distribute Molson products in the county of Chautauqua. Salamanca was not required to sign a distribution agreement relating to the Molson products when it obtained the distribution rights to the brand.

12. In the late 1990s, Martlet's importing rights to the Molson products were assigned to a joint venture between Miller Brewing Company and Molson Canada. Thus, at the time, the Miller-Molson joint venture became the supplier of Molson products to both Sanzone and Salamanca for their respective exclusive territories.

13. The Miller-Molson relationship was short-lived with Molson deciding by late

2000 that it would be better served if it terminated its relationship with Miller. In October 2000, Molson bought back its distribution rights to the Molson products from the joint venture.

14. Almost immediately after terminating its distribution relationship with Miller, Molson determined that it was now in its best interest to align with the Coors Brewing Company, and in December 2000 a joint venture was formed between Molson Inc. and the Coors Brewing Company (Molson 2000 LLC) for the sole purpose of distributing Molson products in the United States.

15. When the joint venture assumed responsibility for the distribution of Molson products in January 2001, it proffered new distribution agreements to its wholesalers, which it titled "Amendment to Distribution Agreement" (the "Molson Amendment").

16. In violation of the New York Alcoholic Beverage Control Laws §55-c ("Section 55-c" or the "Statute"), Molson 2000 LLC required that Sanzone and Salamanca execute the Molson Amendment.

17. The Molson Amendment amended and materially modified Plaintiffs' prior distribution agreements in that it contained, among other terms, a broad pre-dispute arbitration clause in violation of Section 55-c, whereas neither Sanzone nor Salamanca's prior distribution agreements contained an arbitration clause.

18. Neither Plaintiff was involved in a case or controversy with Molson 2000 LLC, which later changed its name to Molson USA LLC ("Molson USA"), at the time Molson required that the Molson Amendment be signed by Sanzone or Salamanca.

19. On January 2, 2001, Salamanca executed the Molson Amendment.

20. Because Salamanca did not have a prior written distribution agreement, Section 1.2 of the Molson Amendment states that the relationship between Molson and Salamanca would

be governed by the terms of the "Prior Molson Agreement," as amended. The Prior Molson Agreement is annexed to the Molson Amendment as Exhibit A.

21. On January 29, 2001, Sanzone executed the Molson Amendment. Because Sanzone was a party to the Prior Martlet Agreement, Section 1.1 of the Molson Amendment, state that the relationship between Molson and Sanzone would be governed by the terms of the Prior Martlet Agreement, as amended by the Molson Amendment.

22. In early 2001, almost immediately after the formation of the Molson/Coors joint venture, Molson USA formulated and began to implement what it called its policy of consolidation.

23. By late 2002, Molson USA contacted Sanzone and Salamanca and announced that it was consolidating its distributors in the New York market and aligning its distribution channel with Coors distributors.

24. Throughout 2003, Sanzone and Salamanca engaged by way of their legal counsel in correspondence with Molson USA disputing Molson USA's right and effort to consolidate the New York market.

25. Upon information and belief, on February 9, 2005, the parent companies of Coors and Molson announced a merger, which resulted in the formation of Molson Coors Brewing Company ("Molson Coors"). Molson USA continued its operations as a wholly owned subsidiary of Molson Coors.

26. On March 11, 2005, Molson USA again, in writing, acknowledged that it adopted a nationwide policy of consolidation in 2002. This was the last correspondence Molson USA ever sent to Sanzone or Salamanca regarding consolidation.

27. Six years later, by letter dated December 2, 2007, Defendant, Coors Brewing

Company ("Coors"), announced to Sanzone and Salamanca, in connection with the dissolution of Molson USA, that Plaintiffs' respective distribution agreements were now assigned by Molson USA to Defendant, Coors. Coors also announced its intention to continue to implement Molson USA's consolidation policy.

## SECTION 55-C OF THE NEW YORK ALCOHOLIC BEVERAGE CONTROL LAW

28. The relationship between "brewers" and "wholesalers" of beer in New York is regulated by Alcoholic Beverage Control Law Section 55-c.

29. Under Section 55-c(2)(a), an "Agreement" is defined as any contract, agreement, arrangement, course of dealing or commercial relationship between a brewer and a beer wholesaler pursuant to which a beer wholesaler is granted the right to purchase, offer for sale, resell, warehouse or physically deliver beer sold by a brewer.

30. A "Brewer" is defined as any person or entity engaged primarily in business as a brewer, manufacturer of alcoholic beverages, importer, marketer, broker or agent of any of the foregoing who sells or offers to sell beer to a beer wholesaler in New York, or any successor to a brewer, under Section 55-c(2)(b).

31. "Beer wholesaler" and "wholesaler" means the holder of a wholesaler's license pursuant to Section fifty-three of the Alcoholic Beverage Control Law who purchases, offers to sell, resells, markets, promotes, warehouses or physically distributes beer sold by a brewer, under Section 55-c(2)(d).

32. Coors is a "brewer" with respect to the Molson Products under Section 55-c.

33. Sanzone is a "wholesaler" with respect to the Molson Products under Section 55-c.

34. Salamanca is a "wholesaler" with respect to the Molson Products under Section 55-c.

35. In enacting §55-c, New York recognized the substantial role wholesalers play in the development of the market and good will of a brewers' products, and sought to protect the significant investment of capital and resources by New York wholesalers by prohibiting, under Section 55-c(4), the termination or the material modification of "Agreements" except for "good cause."

36. "Good cause" is defined, *inter alia*, as the implementation by a brewer of a national or regional policy of consolidation which is reasonable, nondiscriminatory and essential, under Section 55-c(2)(e)(i)(A).

37. In 2001, the statute was amended, requiring pursuant to Section 55-c(2)(e)(i)(A), that such policy of consolidation shall have previously been disclosed in writing, in reasonable detail to the brewer's wholesalers, and shall result in a contemporaneous reduction in the number of a brewer's wholesalers not only for a brand in this state, but also for a brand in contiguous states or in a majority of the states in which the brewer sells the brand.

38. Section 55-c(6) provides that a beer wholesaler may maintain a civil action in a court of competent jurisdiction within this State.

39. Section 55-c(7) provides that "[n]o brewer or beer wholesaler may impose binding arbitration of any issue as a term or condition of an agreement."

40. Under Section 55-c(11), the protections granted to wholesalers under Section 55-c "may not be altered, waived or modified by written or oral agreement in advance of a bona fide case and controversy arising under a written agreement complying with this section."

## THE DISPUTE

41. In an attempt to effectuate a termination of the Sanzone and Salamanca distribution agreements, on December 11, 2007, Coors filed two separate demands for arbitration with the American Arbitration Association ("Demands for Arbitration") against Sanzone and Salamanca, respectively, based upon Molson USA's policy of consolidation. The arbitration proceeding commenced against Sanzone, bears AAA case number 13 155 02713 07 and the proceeding commenced against Salamanca, bears AAA case number 13 155 02714 07, (collectively the "Arbitrations").

42. The Demands for Arbitrations are purportedly based on the pre-dispute arbitration clause contained in the Molson Amendment. However, the demands ignore the terms of the distribution agreements and the provisions of Section 55-c, which expressly govern the parties' relationships.

43. In these Arbitrations, Coors asserts that as assignee of Molson USA's rights under the distribution agreements, Coors is able to pursue Molson USA's consolidation policy and terminate Sanzone and Salamanca.

44. Coors also seeks to litigate the constitutionality of §55-c by alleging that the provisions of Section 55-c relating to a brewer's ability to terminate a distribution agreement pursuant to a national policy of consolidation violate the Dormant Commerce Clause of the United States Constitution in that it impermissibly regulates the conduct of Molson and Coors beyond the boundaries of the state of New York.

45. Accordingly, in the Arbitrations, Coors seeks an award declaring that Coors, as a result of the Molson USA consolidation plan, has the right under Section 55-c to terminate the distribution agreements by which Plaintiffs distribute Molson products in their assigned territories.

## FIRST CLAIM FOR RELIEF
(Declaratory Relief)

46. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 44 as if more fully set forth at length herein.

47. There is an actual controversy between Plaintiffs Sanzone and Salamanca and Coors relating to whether Coors' attempts to terminate the distribution agreements are unlawful pursuant to Section 55-c, and whether Sanzone and Salamanca have rights under Section 55-c relating to Molson Products.

48. In the Arbitrations, Coors asserts that the agreements between Coors and Sanzone and Salamanca can be terminated pursuant to Section 55-c(2)(e)(i)(A) for "good cause" based upon the fact that Coors, as assignee of Molson USA's rights under the distribution agreements, has decided to pursue Molson USA's national plan of consolidation ("Molson USA's Consolidation Policy").

49. Section 55-c(2)(e)(i)(A) defines "good cause" as follows:

> "Good cause" means and shall be limited to:
> (i)(A) The implementation by a brewer of a national or regional policy of consolidation which is reasonable, nondiscriminatory and essential. Such policy shall have been previously disclosed, in writing, in reasonable detail to the brewer's wholesalers, and shall result in a contemporaneous reduction in the number of a brewer's wholesalers not only for a brand in this state, but also for a brand in contiguous states or in a majority of the states in which the brewer sells the brand. All affected wholesalers and affected brewers shall be afforded ninety days prior notice of the implementation of such policy, and such notice shall be provided by the brewer implementing said policy. Further, an affected wholesaler who has actual knowledge of the intended implementation of such policy shall also notify each affected brewer. The term "affected brewers" means all other brewers with an agreement with an affected wholesaler who is a multiple brands wholesaler. The term "affected wholesalers" means wholesalers who may reasonably be expected to experience a loss or

diminishment of a right to distribute a brand, in whole or in part, as a consequence of a proposed consolidation policy.

50. In order for a consolidation policy to qualify as grounds for good cause for the termination of a New York distributor, a brewer seeking to terminate bears the burden of demonstrating that its policy meets the following objective requirements: (1) the consolidation policy will be implemented on a national or regional level; (2) the policy is reasonable, (3) the policy is essential to the brewer; (4) the policy is non-discriminatory; and (5) the brewer's implementation of the consolidation policy, if "regional," will result in a contemporaneous reduction of the number of distributors for its brand both in New York, as well as in the states contiguous to New York, or if "national" the brewer's implementation of the consolidation policy will result in a contemporaneous reduction of the number of distributors for its brand both in New York, as well as in a majority of states in which the brewer's brand is sold.

51. In addition, Section 55-c requires that the brewer shall previously disclose the policy of consolidation, in writing, in reasonable detail, to the brewer's wholesalers.

52. While Coors is apparently attempting to adopt the Molson USA Consolidation Policy, Coors, in the Arbitrations, has failed to allege that Coors has adopted a policy of consolidation. Neither has Coors alleged that (1) the Molson USA Consolidation Policy will be implemented by Coors on a national level; (2) the Molson USA Consolidation Policy is reasonable with respect to Coors; (3) the Molson USA Consolidation Policy is essential to Coors; (4) as implemented by Coors, the Molson USA Consolidation Policy is non-discriminatory; or that (5) Coors' implementation of the Molson USA Consolidation Policy will result in a contemporaneous reduction of the number of distributors for its brand both in New York, as well as in a majority of states in which the Molson brand is sold.

53. Moreover, Coors fails to assert that Coors provided Plaintiff with the required

notice disclosing in detail the consolidation policy.

54. To support its position that it can terminate Plaintiffs, Coors completely relies upon an arbitration award issued in favor of Molson USA (a different brewer), against a different New York distributor, John G. Ryan, Inc., wherein the arbitrator found that portions of the statute were unconstitutional and as a result, Molson USA's Consolidation Policy satisfied the requirements of Section 55-c as it related to Molson USA's business (the "Ryan Award").

55. The Ryan Award, while not binding legal precedent in any event, fails to support Coors' position that it can terminate Sanzone and Salamanca based upon Molson USA's Consolidation Policy because the Ryan Award analyzed Molson USA's Consolidation Policy as it related specifically to the business operations of Molson USA, not Coors.

56. The Ryan Award does not hold that (1) Molson USA's Consolidation Policy was implemented by Coors on a national level; (2) the Molson USA Consolidation Policy is reasonable to Coors; (3) the Molson USA Consolidation Policy is essential to Coors; (4) the Molson USA Consolidation Policy is non-discriminatory; or that (5) Coors' implementation of the Molson USA Consolidation Policy will result in a contemporaneous reduction of the number of distributors for its brand both in New York, as well as in a majority of states in which the Molson brand is sold.

57. As of this date, there has been no decision that is entitled to precedential value to the effect that either the Molson USA Consolidation Policy satisfied the requirements of §55-c with respect to its business or the Molson USA Consolidation Policy is reasonable, non-discriminatory and essential to Coors' business operations.

58. Sanzone and Salamanca assert that Molson USA's Consolidation Policy is not reasonable, non-discriminatory or essential to Coors and that it violates Section 55-c and is not

grounds for a "good cause" termination of the distributor agreements.

59. Coors is a brewer and seller of Coors brand products (the "Coors Brands") and Coors' business focuses primarily on the production, marketing and distribution of the Coors Brands, including its flagship brand Coors Light.

60. Upon information and belief, the marketing and distributing of Molson products by Coors represents a miniscule percentage of Coors' total business.

61. Thus, because the marketing and distribution of the Molson products represents such an exceedingly minor portion of Coors' business, Coors cannot establish that the implementation of Molson USA's Consolidation Policy by Coors is reasonable, non-discriminatory or essential to Coors' business.

62. Based upon the above, Sanzone and Salamanca assert that Coors may not terminate their distributor agreements because Coors has not acted with the requisite "good faith" required under the statute.

63. In addition, Coors has failed to provide Plaintiffs with the statutory notice of its consolidation policy as required by Section 55-c.

64. In order to prevent immediate adverse legal consequence to Sanzone and Salamanca, a declaration is necessary that (i) Coors' attempt to terminate its distributor agreements with Sanzone and Salamanca is unlawful because Coors does not have a basis under Section 55-c to terminate the agreements between Coors and Sanzone and Salamanca regarding Sanzone's and Salamanca's distribution rights of the Molson products; and (ii) Coors must recognize and honor Sanzone's and Salamanca's exclusive distribution rights to the Molson products in their respective exclusive territories and must perform under its agreements with Sanzone and Salamanca.

65. By reason of the foregoing, Sanzone and Salamanca are entitled to a declaration pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57 that (i) Coors' attempt to terminate its distributor agreements with Sanzone and Salamanca is unlawful because Coors does not have a basis under Section 55-c to terminate the agreements between Coors and Sanzone and Salamanca regarding Sanzone's and Salamanca's distribution rights of the Molson products; and (ii) Coors must recognize and honor Sanzone's and Salamanca's exclusive distribution rights to the Molson products in their respective exclusive territories and must perform under its agreements with Sanzone and Salamanca.

### SECOND CLAIM FOR RELIEF
(Permanent Injunction)

66. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 60 as if more fully set forth at length herein.

67. Pursuant to Section 4 of the Federal Arbitration Act, a court has the concomitant power to enjoin an arbitration proceeding where the parties have not agreed to binding arbitration or where such provision is not enforceable.

68. Coors' wrongfully asserts that Sanzone and Salamanca have agreed to binding arbitration pursuant to the Molson Amendment.

69. Although the Molson Amendment purports to grant Coors the right to commence binding arbitration, Molson USA did not have statutory "good cause" to modify Plaintiffs' prior distribution agreements (which contained no arbitration provisions) and thus, the arbitration provisions contained in the Molson Amendment are not enforceable.

70. Even if the Molson Amendment is enforceable, the arbitration provisions contained in that agreement are not enforceable because the Molson Amendment specifically incorporates New York law and explicitly provides that conflicts are decided in favor of New

York law.

71. The provisions of Section 55-c conflict with the pre-dispute arbitration clause contained in the Molson Amendment because Section 55-c (i) prohibits mandatory pre-dispute arbitration clauses; (ii) gives wholesalers the right to commence an action in the event of a breach by a brewer; and (iii) prevents brewers from requiring wholesalers to waive their rights.

72. If the Molson Amendment is enforceable, the Arbitrations are nevertheless barred because Molson failed to commence the Arbitration within the limitation period (one year) contained within the Molson Amendment.

73. The pre-dispute arbitration clause is unenforceable because it violates the express public policy of New York.

74. Finally, because Coors, in the Arbitrations, is seeking to declare various provisions of New York law unconstitutional, arbitration is not the appropriate forum for this dispute.

75. As a result of Coors' improper commencement of Arbitrations against Sanzone & Salamanca, both Sanzone and Salamanca will suffer irreparable harm.

76. By reason of the foregoing, in order to remedy the effect of Coors' improper conduct, Sanzone and Salamanca are entitled to a permanent injunction enjoining Coors from continuing the Arbitrations against Sanzone and Salamanca.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(a) a declaration pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57 that (i) Coors' attempt to terminate its distributor agreements with Sanzone and Salamanca is unlawful because Coors does not have a basis under Section 55-c to terminate the agreements between Coors and Sanzone and Salamanca regarding Sanzone's and Salamanca's distribution rights

of the Molson beer products; and (ii) Coors must recognize and honor Sanzone's and Salamanca's exclusive distribution rights to the Molson beer products in the Exclusive Territory and must perform under its agreements with Sanzone and Salamanca.

(b) a permanent injunction enjoining Coors from continuing the Arbitrations against Sanzone and Salamanca.

(c) granting Plaintiffs their costs and attorney's fees; and

(d) such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
January 10, 2008

ETTELMAN & HOCHHEISER, P.C.

By: _____
Gary Ettelman (GE 9315)
Attorneys for Plaintiff
100 Quentin Roosevelt Blvd., Suite 401
Garden City, New York 11530
(516) 227-6300