Robert A. Scher (RS 2910)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474

Jon P. Christiansen
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-5557

Attorneys for Defendant Coors Brewing Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SPIRIT & SANZONE DISTRIBUTORS CO., :
INC., and                          :
                                   :
SALAMANCA-AREA BEVERAGE            :
COMPANY, INC.,                     :       Civil Action No. 08 CV 0251(LLS)
                                   :
              Plaintiffs,          :
                                   :
vs.                                :
                                   :
COORS BREWING COMPANY,

              Defendant.

_____


**DEFENDANT COORS BREWING COMPANY'S MEMORANDUM
OF LAW OPPOSING PLAINTIFFS' APPLICATION FOR PRELIMINARY
INJUNCTION TO STAY ARBITRATIONS AND IN SUPPORT OF COORS' MOTION
TO DISMISS OR STAY THE ACTION IN FAVOR OF ARBITRATION**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT .............................................................................................................................. 3

I.    The Federal Arbitration Act and the Supremacy Clause Require Enforcement of the
      Parties' Agreement to Arbitrate. ..................................................................................... 4

      A.    The FAA Preempts New York's Restrictions on Pre-Dispute Arbitration Clauses.
            ................................................................................................................................ 5

      B.    The Twenty-First Amendment Does Not Protect Section 55-c From Preemption. 6

      C.    No Federal Statute Saves § 55-c's Anti-Arbitration Provisions From Preemption. 8

II.   The Parties' Agreement Delegates to the Arbitrator All Remaining Issues of Arbitrability.
      ...................................................................................................................................... 11

III.  The Contract's Choice of New York Law Does Not Defeat Arbitrability. ..................... 13

      A.    The Molson Amendment Did Not Require "Good Cause," and Plaintiffs'
            Voluntary Acceptance of It Is Not Barred by § 55-c. .......................................... 13

      B.    The Parties' Choice-of-Law Provision Does Not Defeat Arbitration.................... 15

IV.   If Necessary, the Arbitrator Can Resolve Whether the Dormant Commerce Clause Limits
      § 55-c's Purported Constraints on a Brewer's Interstate Consolidation of Distributors. . 18

CONCLUSION .......................................................................................................................... 20

# TABLE OF AUTHORITIES

CASES

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974)...................................................................................18

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995)...............................................................................4-5

*Apollo Computer, Inc. v. Berg*,
    886 F.2d 469 (1st Cir. 1989)..................................................................13

*Benjamin v. Traffic Executive Ass'n E. R.R.*,
    869 F.2d 107 (2d Cir. 1989)...................................................................19

*Bondy's Ford, Inc. v. Sterling Truck Corp.*,
    147 F. Supp. 2d 1283 (M.D. Ala. 2001) ...............................................17

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)...............................................................................13

*California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
    445 U.S. 97 (1980)...........................................................................7-8, 11

*Capital Cities Cable, Inc. v. Crisp*,
    467 U.S. 691 (1984)..............................................................................6-8

*Contec Corp. v. Remote Solution Co.*,
    398 F.3d 205 (2d Cir. 2005)............................................................. 11-13

*Coppinger v. Metro-North Commuter Railroad*,
    861 F.2d 33 (2d Cir. 1988)....................................................................19

*Doctor's Assocs., Inc. v. Casarotto*,
    517 U.S. 681 (1996)..................................................................................4

*G.E. v. Compagnie Euralair*,
    94 F. Supp. 527 (S.D.N.Y. 1996) .........................................................17

*Gonzalez v. Shanker*,
    399 F. Supp. 858 (S.D.N.Y. 1975) .......................................................19

*Granholm v. Heald*,
    544 U.S. 460 (2005)......................................................................6, 8-9, 11

*Green Tree Fin. Corp. v. Bazzle*,
539 U.S. 444 (2003)..........................................................................5

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)..........................................................................13

*In re G. Heileman Brewing Co.*,
128 B.R. 876 (Bankr. S.D.N.Y. 1991)...........................................8

*In re J.F.D. Enters., Inc.*,
183 B.R. 342 (Bankr. D. Mass. 1995).............................................8

*John G. Ryan, Inc. v. Molson U.S.A., LLC*,
No. 05CV3984, 2005 WL 2977767 (E.D.N.Y. Nov. 7, 2005) ........................*Passim*

*Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*,
239 F. Supp. 2d 332 (S.D.N.Y. 2002)..........................................1, 4

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995)..................................................................*Passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985).......................................................................18

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)..............................................................................5

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996)......................................................16-17

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987)..................................................................18-19

*Southland Corp. v. Keating*,
465 U.S. 1 (1984).................................................................4-5, 17

*Stawski Distrib. Co. v. Browary Zywiec S.A.*,
349 F.3d 1023 (7th Cir. 2003) ...................................................1, 5-7

*Stephens v. American International Ins. Co.*,
66 F.3d 41 (2d Cir. 1995)..............................................................10

*Termix Int'l Co. v. Palmer Ranch Ltd. Partnership*,
432 F.3d 1327 (11th Cir. 2005) ................................................12-13

*Travelers Indemnity Co. v. F & S London Pub, Inc.*,
270 F. Supp. 2d 330 (E.D.N.Y. 2003) ............................................16

MILW_3012753

*Truck Drivers Local Union v. Reg'l Import & Export Trucking Co.*,
    944 F.2d 1037 (2d Cir. 1991)......................................................................4

*VKK Corp. v. NFL*,
    244 F.3d 114 (2d Cir. 2001)....................................................................14

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)........................................................................... 15-16


## CONSTITUTION

U.S. Const. amend. XXI, § 2 ...................................................*Passim*

U.S. Const. art. VI, cl. 2............................................................6


## STATUTES

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*..........................................1

    9 U.S.C. §§ 1 & 2...............................................................4

    9 U.S.C. § 3...................................................................1, 4

11 U.S.C. § 365.....................................................................8

15 U.S.C. § 1012(b)...............................................................10

Webb-Kenyon Act,

    27 U.S.C. § 122............................................................ 8-10

The Twenty-first Amend. Enforcement Act,

    27 U.S.C. § 122a.......................................................... 8-10

28 U.S.C. § 2403...................................................................19

New York Alcoholic Beverage Control Law, § 55-c .........................................*Passim*


## Rules

Fed. R. Civ. P. 5.1's...............................................................19

## INTRODUCTION

Plaintiffs Spirit & Sanzone Distributors, Co., Inc. ("Sanzone") and Salamanca-Area Beverage Beverage Company, Inc. ("Salamanca") and defendant Coors Brewing Company ("Coors") have written agreements to arbitrate "any and all disputes." This action should be dismissed because all of the issues are referable to arbitration and Coors has commenced arbitrations against plaintiffs to resolve those disputes. 9 U.S.C. § 3; s*ee Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) (when all issues are subject to arbitration, action should be dismissed).

Plaintiffs' arguments in defense of adjudication by this Court all ultimately rely on the anti-arbitration provisions of the New York Alcoholic Beverage Control Law ("§ 55-c"). The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), however, preempts § 55-c's anti-arbitration provisions. In an effort to avoid FAA preemption, plaintiffs make two types of arguments:

First, they contend that the Twenty-first Amendment and other federal statutes authorizing the states to regulate alcohol distribution "save" § 55-c's anti-arbitration provisions from FAA preemption. Twice before plaintiffs' counsel has made this very argument: federal courts correctly rejected it both times. *See Stawski Distrib. Co. v. Browary Zywiec S.A.*, 349 F.3d 1023 (7th Cir. 2003); *John G. Ryan, Inc. v. Molson U.S.A., LLC*, No. 05CV3984, 2005 WL 2977767 (E.D.N.Y. Nov. 7, 2005).

Second, plaintiffs argue that § 55-c's provisions—either of their own effect or because they became part of the parties' agreement when the parties chose New York law—require litigation in this Court. These arguments are also incorrect. The parties' agreement plainly assigns questions regarding whether issues are arbitrable and the proper construction of the parties' agreement to the arbitrator. Pursuant to the FAA and the parties' arbitration agreement,

MILW_3012753

the Court should defer those issues in favor of arbitration.  If the Court were to consider plaintiffs' proposed statutory and contractual arguments, however, none of them defeat the parties' agreement to arbitrate "any and all disputes."

## BACKGROUND

Plaintiffs are two beer distributors located in New York.  (Compl. ¶¶ 10-11.)  Both distribute Molson beer pursuant to a contractual relationship with Coors, which distributes Molson beer in the United States.  (*Id.* ¶¶ 14-15, 19.)

Before 2001, plaintiffs distributed Molson products for earlier United States U.S. Molson importers, Martlet's and a later Miller-Molson joint venture.  (*Id.* ¶¶ 10-14.)  In 2001, plaintiffs entered into new distribution agreements with a Molson Inc./Coors Brewing Company joint venture called Molson USA LLC.  (*Id.* ¶¶ 18-19, 21.)  These agreements have become known as the "Molson Amendment," because, by its terms, the Molson Amendment added to and incorporated much of what was believed to be the distributor's prior distributor agreement.  (*Id.* ¶ 15 & Ex. E.)  The Molson Amendment provided plaintiffs the right to distribute Molson products for several years and contained a provision opting for arbitration of "[a]ny and all disputes" between them under the procedures of the American Arbitration Association ("AAA"), including the AAA's Commercial Arbitration Rules. (*Id.* Ex. E.)  Specifically, the Molson Amendment states:

MILW_3012753

> Any and all disputes between Distributor and the Company or its agent, Coors, . . . including without limitation a dispute as to whether the Company has grounds to terminate this Agreement, which disputes are not resolved by Mediation, shall be submitted to binding arbitration in the city nearest to Distributor in which there is a regional office of the American Arbitration Association, before a single arbitrator, in accordance with the Commercial Arbitration Rules and procedures of the American Arbitration Association.

(*Id.* Ex. E, ¶ 6.2.)

As Coors describes in its Arbitration Demand, Coors was assigned the distributor agreements at issue in December 2007. (Compl. Ex. G.) Coors has continued a plan of national consolidation commenced by Molson USA LLC in order to have Molson products distributed by Coors distributors and to have fewer and more financially secure distributors. (*Id.*) After unsuccessful attempts to negotiate the voluntary sale of plaintiffs' distribution rights, Coors commenced arbitration proceedings to obtain a declaration of its right to terminate plaintiffs' distribution agreements and declaring the amount of compensation owed plaintiffs for the fair market value of their distribution rights. (*Id.*; *see also* Compl. ¶¶ 41-45.)

Plaintiffs commenced this action to request a declaration that Coors' attempt to terminate their rights violates New York's § 55-c and to obtain an injunction against termination.

## ARGUMENT

Defendant Coors seeks an order dismissing or staying this case pursuant to § 3 of the Federal Arbitration Act ("FAA"), which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The very existence of an arbitration clause raises a "presumption of arbitrability." *See Truck Drivers Local Union v. Reg'l Import & Export Trucking Co.*, 944 F.2d 1037, 1042 (2d Cir. 1991). Where, as here, all issues before the court are properly the subject of arbitration, the action should be dismissed. *Lewis Tree Serv.*, 239 F. Supp. 2d at 340 ("Because all of [plaintiff's] claims are subject to arbitration, no useful purpose will be served by granting a stay of [plaintiff's] claims and thus its action against the defendants is dismissed.").

## I.    The Federal Arbitration Act and the Supremacy Clause Require Enforcement of the Parties' Agreement to Arbitrate.

In enacting the FAA Congress declared a national policy favoring arbitration "and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The FAA's preemption of anti-arbitration state laws extends to any transaction "involving commerce." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274 (1995); *see also* 9 U.S.C. §§ 1 & 2.

The Molson Amendment unquestionably evidences a transaction involving international and interstate commerce under § 2 of the FAA. It pertains to the shipment of beer brewed in Canada, imported by Coors, and shipped to plaintiffs in New York. (*See* Compl. Ex. E, Recital A ("The Company has acquired the right to Import and sell Molson malt beverage products . . . in the United States of America"; *id.* ¶ 7 (directing notices to be sent to Coors in Golden, Colorado).)

In furtherance of the FAA's ultimate goal of ensuring "that private agreements to arbitrate are enforced according to their terms," *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54 (1995) (internal quotation omitted), all doubt regarding the scope of arbitrable

MILW_3012753

issues must be resolved in favor of arbitration, *see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).

### A.    The FAA Preempts New York's Restrictions on Pre-Dispute Arbitration Clauses.

Section 55-c purports to limit arbitration agreements between brewers (such as Coors) and beer wholesalers (such as plaintiffs).[1]   While § 55-c "does not prohibit entirely agreements to arbitrate between beer brewers and wholesalers," "it does explicitly ban pre-dispute arbitration clauses." *Ryan*, 2005 WL 2977767, at *4.

There is no serious debate that § 55-c's anti-arbitration provisions, unless "saved" by some other federal law, are preempted by the FAA. *See Southland Corp.*, 465 U.S. at 10, 16; *see also Allied-Bruce*, 513 U.S. at 281 (state may not "decide that a contract is fair enough to enforce all its basic terms . . . but not fair enough to enforce its arbitration clause"). *Ryan*, a case in which another distributor unsuccessfully attempted to avoid the same Molson Amendment arbitration provision at issue here, held that no "saving" federal law exists and that § 55-c's anti-arbitration provisions are preempted by the FAA:  "Section 55-c-(7)(c) of the New York State Alcoholic Beverages Control Law is preempted by the Federal Arbitration Act."  2005 WL 2977767, at *17; *see also Stawski*, 349 F.3d at 1025 (holding similar Illinois anti-arbitration provision preempted and stating, "Federal law . . . disables states from subjecting arbitration to rules that are not generally applicable to other contractual choices").

---

[1]    *See* § 55-c(7)(c) ("No brewer or beer wholesaler may impose binding arbitration of any issue as a term or condition of an agreement."); § 55-c(6) (granting wholesaler or distributor right to file civil action to challenge termination alleged to violate the statute); § 55-c(11) ("the requirements of this section may not be altered, waived or modified by written or oral agreement in advance of a bona fide case and controversy arising under a written agreement complying with this section").

**B.     The Twenty-First Amendment Does Not Protect Section 55-c From Preemption.**

Plaintiffs argue that the Twenty-first Amendment saves § 55-c's anti-arbitration provisions from preemption.  Repealing the Eighteenth Amendment's prohibition on liquor sales, the Twenty-first Amendment authorizes the states to regulate liquor transportation and importation on a non-discriminatory basis without running afoul of the Dormant Commerce Clause.  *See Granholm v. Heald*, 544 U.S. 460, 485-89 (2005); *Stawski*, 349 F.3d at 1026.  The operative language is contained in Section 2:  "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."  U.S. Const. amend. XXI, § 2.

Section 2 does not, however, allow state laws to violate other constitutional provisions: "the Court has held that state laws that violate other provisions of the Constitution are not saved by the Twenty-first Amendment."  *Granholm*, 544 U.S. at 486; *see also Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 712 (1984) (the Twenty-first Amendment "does not license the States to ignore their obligations under other provisions of the Constitution").  One such provision is the Constitution's Supremacy Clause, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the . . . Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.  Because the FAA is a "Law of the United States," it prevails over § 55-c's anti-arbitration provisions by operation of the Supremacy Clause.  *See Stawski*, 349 F.3d at 1026 (Twenty-first Amendment "does not relieve Illinois of its obligation to respect federal statutes and treaties, 'the supreme Law of the Land'").[2]

---

[2]     In *Stawski*, a beer distributor, represented by plaintiffs' counsel here, brought an action for wrongful termination under the Illinois Beer Industry Fair Dealing Act, and the Polish brewer moved to arbitrate the dispute in Poland pursuant to the agreement.  The Seventh Circuit held that the Twenty-first Amendment did not allow the state statute to prevail over the FAA.  The Seventh Circuit reasoned that the "'Twenty-first Amendment does not in any

Plaintiffs, ignoring the clear command of the Supremacy Clause, argue that "New York's statute falls within the 'core' of the 21st Amendment and New York's interests thus outweigh the federal interest behind the FAA." (Pls.' Br. 26.[3])  This is essentially the same argument that plaintiffs' counsel made in *Stawski* and *Ryan*.  Both courts rejected it.  The Seventh Circuit held that arguments that the Twenty-first Amendment displaced federal laws had been "unanimously dispatched by the Supreme Court in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980), . . . and again in [*Crisp*]." *Id.* (citations omitted).  As the Seventh Circuit noted, plaintiffs' "[c]ounsel candidly (and accurately) admitted at oral argument that, since *Crisp*, no other federal court has held that the twenty-first amendment allows any state to disregard any federal statute."  *Id.*  Plaintiffs' counsel tried again in *Ryan* to no greater effect.

As *Ryan* reasoned, even if the Twenty-first Amendment requires a weighing of state and federal interests, the scale does not tip in favor of preserving § 55-c's anti-arbitration provisions from preemption.  First, the anti-arbitration clause "does *not* fall within the core of the Twenty-first Amendment." *Ryan*, 2005 WL 2977767, at *10.  At best, the anti-arbitration clause "governs a procedural matter affecting only the forum in which a dispute will be considered," *id.* at *11, rather the substantive protections that will continue to apply in arbitration, *id.*

Consequently, if this Court finds it necessary to "harmonize state and federal powers," *id.* at *12, it should conclude, as did *Ryan*, that "the balance does tip decisively in favor of the Federal Arbitration Act," *id.*  Nothing supports a conclusion that the anti-arbitration provisions are vital to preserving New York's three-tiered alcohol distribution system, rather than being

---

way diminish the force of the Supremacy Clause" and that "it is the Supremacy Clause that subordinates the state's preference to the federal rule."  *Stawski*, 349 F.3d at 1026.

[3]    Memorandum of Law in Support of Plaintiffs' Application for a Preliminary Injunction to Stay the Arbitrations Commenced by Coors Brewing Company ("Pls.' Br."), Dkt. No. 13, filed January 24, 2008.

7

intended to protect in-state distributors. *Id.* As *Ryan* holds, the federal government's "clearly articulated . . . interest in promoting a national policy in favor of arbitration," *id.*, must prevail:

> the State's unsubstantiated interest . . . simply is not of the same stature as the goals of the Federal Arbitration Act. . . . Accordingly, and because a "core" power of the Twenty-first Amendment is not implicated in this case, the balance tips decisively in favor of the federal statute. Notwithstanding Section 2 of the Twenty-first Amendment, I hold that Section 55-c(7)(c) is preempted by the Federal Arbitration Act.

*Id.* (internal quotation marks, citations, and brackets omitted).[4]

### C.    No Federal Statute Saves § 55-c's Anti-Arbitration Provisions From Preemption.

Plaintiffs also argue that the Webb-Kenyon Act, 27 U.S.C. § 122, and the Twenty-first Amendment Enforcement Act, 27 U.S.C. § 122a, evidence congressional intent to "federalize" state anti-arbitration provisions and thus save them from FAA preemption. *Ryan* properly rejected this ill-conceived argument. Neither statute expressly displaces the FAA's application to beer distribution or evidences congressional intent to do so implicitly.

The Webb-Kenyon Act is a statutory precursor to § 2 of the Twenty-first Amendment. *See Granholm*, 544 U.S. at 481. Like the Amendment that followed, the Act authorizes states to regulate the importation and transportation of alcohol. *Id.* Entitled, "An Act diverting

---

[4]    The only decision plaintiffs cite that declines application of a federal statute in favor of a state liquor law is *In re G. Heileman Brewing Co.*, 128 B.R. 876 (Bankr. S.D.N.Y. 1991). In *G. Heileman*, a bankruptcy court held that an Oregon statute preventing manufactures from terminating alcohol distribution agreements would prevail over a debtor's right to reject an executory contract under 11 U.S.C. § 365. *Crisp*, *Midcal*, *Stawski*, *Ryan*, and other decisions cast this holding into substantial doubt. But, even were it correct, it is inapposite. For the reasons *Ryan* gave, explained above, § 55-c's arbitration-limitation cannot similarly be viewed as "a necessary component," *see* 128 B.R. at 885, to New York's regulation of beer sales. *Cf. In re J.F.D. Enters., Inc.*, 183 B.R. 342, 352 (Bankr. D. Mass. 1995) (declining to follow *G. Heileman* in light of *Crisp* and *Midcal* and when state statute does not "directly relate to the state's interest in the transportation, importation, delivery or use of alcohol").

intoxicating liquors of their interstate character in certain cases," Congress intended the Act to allow states to prohibit transportation or importation of alcohol free of the otherwise invalidating force of the Dormant Commerce Clause. *Id.* The statute provides:

> The shipment or transportation . . . of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State . . . into any other State . . . which said . . . liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State . . . is prohibited.

27 U.S.C. § 122.

Congress's intent in passing Webb-Kenyon was not to "federalize" all state liquor laws. *See Ryan*, 2005 WL 2977767, at *13. Nor by Webb-Kenyon's terms does it displace the FAA, a federal statute calculated to preserve the private adjudication of disputes. *See id.* at *13-14.

The Twenty-first Amendment Enforcement Act, 27 U.S.C. § 122a, also does not trump the FAA. The Enforcement Act grants state attorneys general the right to enforce in federal court by way of injunction their state laws regulating the transportation of liquor.[5] Like Webb-

---

[5]    The Enforcement Act provides:

> (b) Action by State attorney general.

> If the attorney general has reasonable cause to believe that a person is engaged in, or has engaged in, any act that would constitute a violation of a State law regulating the importation or transportation of any intoxicating liquor, the attorney general may bring a civil action in accordance with this section for injunctive relief (including a preliminary or permanent injunction) against the person, as the attorney general determines to be necessary to—(1) restrain the person from engaging, or continuing to engage, in the violation; and (2) enforce compliance with the State law.

> (c) Federal jurisdiction

> (1) In general

9

Kenyon, the Enforcement Act does not evidence any congressional intent to displace the FAA's preference for arbitration of private disputes over alcohol distribution rights. As *Ryan* held, the Enforcement Act "was meant only to provide the States with a forum for challenging violations of their state liquor laws, and does not, therefore, 'save' Section 55-c from federal preemption by the Federal Arbitration Act." *Ryan*, 2005 WL 2977767, at *14.

Because neither Webb-Kenyon nor the Enforcement Act purports to save state liquor laws from preemption by other federal laws, plaintiffs' reliance on *Stephens v. American International Ins. Co.*, 66 F.3d 41 (2d Cir. 1995), is misplaced. *Stephens* held that the McCarran-Ferguson Act, which by its terms provides that "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance," 15 U.S.C. § 1012(b), evidences congressional intent that the FAA not preempt anti-arbitration provisions in state insurance law. But, as plaintiffs here concede, Webb-Kenyon does not have "the restrictive language contained in the McCarran-Ferguson Act" (Pls.' Br. 25). Webb-Kenyon, as *Ryan* held, "cannot convincingly be likened to the McCarran Act [because it] expresses no intent to render federal laws inapplicable to state liquor laws." *Ryan*, 2005 WL 2977767, at *15.

Plaintiffs attempt to bridge this gap by arguing, without citation of authority, that Webb-Kenyon gave states *exclusive* authority to regulate liquor distribution, therefore, Congress lacked the power to extend the FAA to beer distribution agreements. (Pls.' Br. 25 ("because the Webb-Kenyon Act, followed by the 21st Amendment, granted states the *exclusive right* to regulate the

---

> The district courts of the United States shall have jurisdiction over any action brought under this section by an attorney general against any person, except one licensed or otherwise authorized to produce, sell, or store intoxicating liquor in such State.

27 U.S.C. § 122a(b)-(c)(1).

10

distribution of alcohol within their own boarders, . . . Congress does not have the authority to enact a statute that *directly* regulates the distribution of alcohol within the State's borders." (emphasis in original).)  As *Ryan* ruled when plaintiffs' counsel tried the argument there:  "This argument cannot stand, however, as the Supreme Court has held to the contrary."  *Ryan*, 2005 WL 2977767, at *15.  Indeed, the Supreme Court has clearly rejected plaintiffs' premise that Congress cannot regulate alcohol under the Commerce Clause:  "the Court has held that § 2 [of the Twenty-first Amendment] does not abrogate Congress' Commerce Clause powers with regard to liquor."  *Granholm*, 544 U.S. at 487; *see also Midcal*, 445 U.S. 97 (holding that Twenty-first Amendment did not bar application of the Sherman Act).

## II.    The Parties' Agreement Delegates to the Arbitrator All Remaining Issues of Arbitrability.

Plaintiffs raise several arguments that § 55-c, either of its own force or as a result of incorporation into the parties' agreement, defeats arbitration.  Under the FAA, however, the issue of arbitrability is decided by the arbitrator if there is clear and unmistakable evidence that the parties signed an arbitration agreement that so provides.  *See Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

The parties' agreement—the Molson Amendment—broadly provides that "[a]ny and all disputes between the Distributor [plaintiff] and the Company or its agent, Coors . . . shall be subject to binding arbitration."  (Compl. Ex. E, ¶ 6.2.)  What is more, like the arbitration agreement in *Contec*, the Molson Amendment clearly provides that the arbitration shall be conducted "in accordance with the Commercial Arbitration Rules and procedures of the American Arbitration Association."  (*Id.*)  Rule 7 of the Commercial Arbitration Rules gives the arbitrator broad authority to decide whether the dispute is arbitrable:

MILW_3012753

R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

AAA Commercial Arbitration Rule, Rule 7(a) & (b) (2007).[6]  As the Second Circuit held under materially identical circumstances in *Contec*, "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec*, 398 F.3d at 208.[7]  "[A]s a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, [plaintiffs] cannot now disown [their] agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability." *Id.* at 211 (emphasis in original).

Plaintiffs do not (and could not) contest that they agreed voluntarily to the Molson Amendment, which they signed in 2001 and afforded them multi-year distribution rights.  By the Molson Amendment's express terms, plaintiffs authorized an arbitrator to determine the issues they now seek to litigate in this Court, including (i) whether there is a binding obligation to arbitrate; (ii) if so, the proper scope of the arbitration; and (iii) whether the parties' contract embodying the arbitration agreement is valid.  As *Contec* teaches, the FAA's enforcement of the

---

[6]    Available at http://www.adr.org/sp.asp?id=22440#R7.

[7]    *See also Termix Int'l Co. v. Palmer Ranch Ltd. Partnership,* 432 F.3d 1327, 1332-33 (11th Cir. 2005) (arbitrability for arbitrator when AAA Rules incorporated into contract) (collecting other authorities).

MILW_3012753

parties' express arbitration provision requires that all of plaintiffs' arguments that state law

nullifies or limits the scope of the arbitration must be decided by the arbitrator. *Contec*, 398 F.3d

at 209, 211; *see also Terminix*, 432 F.3d at 1332-33; *Apollo Computer, Inc. v. Berg*, 886 F.2d

469 (1st Cir. 1989). Consequently, because the Molson Amendment's incorporation of the AAA

Commercial Arbitration Rules requires that the arbitrator decide all issues relating to

arbitrability, as well as all issues of contract interpretation and validity, binding precedent

requires that this case be dismissed in favor of arbitration. *Contec*, 398 F.3d at 209, 211.

**III.    The Contract's Choice of New York Law Does Not Defeat Arbitrability.**

As discussed in part II, above, the arbitrator, rather than this Court, should decide

plaintiffs' arguments that § 55-c, either by its own force or by incorporation into the parties'

contract, invalidates the Molson Amendment's arbitration agreement. If, however, the Court

decides to reach those arguments, it should reject them for the following reasons.

**A.    The Molson Amendment Did Not Require "Good Cause," and Plaintiffs'
Voluntary Acceptance of It Is Not Barred by § 55-c.**

Relying on § 55-c(3) & (4), plaintiffs contend that "the Molson Amendment was void

because 'good cause' did not exist to amend the parties' prior agreements." (Pls.' Br. 12.) Even

aside from the parties' agreement to abide by AAA Rules, this challenge to the validity of the

Molson Amendment is one reserved for arbitration: "[U]nless the challenge is to the arbitration

clause itself, the issue of the contract's validity is considered by the arbitrator in the first

instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *see also

Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002).

The challenge is also misplaced as a matter of New York law. Contrary to plaintiffs'

construction, § 55-c does not purport to bar distributors from accepting new terms, such as those

embodied in the Molson Amendment, which offered presumptively attractive long-term

13

distribution rights in addition to providing for arbitration of all disputes between the parties. Section 55-c(3) & (4), on which plaintiffs rely, are simply not applicable to the voluntary execution of the Molson Amendments. Subsection (3) *authorizes* a brewer unilaterally to cancel, modify, or terminate a contract for good cause: it does not limit the parties' ability to consensually modify terms. Subsection (4) similarly does not limit the parties' ability to select new terms: it merely requires a brewer to have good cause to cancel, terminate or not renew an agreement. Tellingly, plaintiffs offer no authority supporting their novel reading of the statute. They also do not allege—and make no argument—that the execution of the Molson agreements was coerced.[8]

What is more, if plaintiffs' construction of § 55-c as imposing a "good cause" limitation on arbitration were correct (which it is not), that limitation would be preempted by the FAA. State law cannot impose special limitations on parties' ability to choose arbitration. *See Doctor's Assocs.*, 517 U.S. at 688 (invalidating state law that imposed special notice requirement for enforceability of arbitration agreement). While plaintiffs argue that any amendment to an agreement between a brewer and a distributor—not just arbitration agreements—requires good cause to be enforceable, the effect is to impose a state restriction on the ability of parties voluntarily to choose arbitration for dispute resolution. This roadblock is created by § 55-c(7)(c), which precludes a brewer from imposing binding arbitration as a term of an agreement.

---

[8]  In addition, even if the Court were to accept Plaintiffs' argument that good cause is required to amend an agreement, the amendment occurred in 2001 and the Plaintiffs have ratified the contract by accepting the benefits of the contract for this entire period. *Cf. VKK Corp. v. NFL*, 244 F.3d 114, 122-23 (2d Cir. 2001) (under New York law, if party claiming duress "does not promptly repudiate the contract or release, he will be deemed to have ratified it" (footnote omitted)) (collecting authorities); *id.* at 125 ("We hold that as a matter of law, thirty months was not "prompt" for repudiation purposes).

A requirement of good cause to amend a contract to include an arbitration provision has the same

proscribed effect as singling consensual arbitration provisions out for exclusion.

**B.      The Parties' Choice-of-Law Provision Does Not Defeat Arbitration.**

Plaintiffs argue that the agreement's choice of New York law defeats arbitrability

because it requires incorporation of § 55-c's anti-arbitration provisions.  While interpretation of

the parties' agreement is properly for the arbitrator, plaintiffs' argument is not well founded.

When, as here, the parties' agreement contains an express arbitration clause, a choice-of-

law clause selecting state law that purports to limit arbitration does not defeat the agreement to

arbitrate.  *See Mastrobuono*, 514 U.S. 52.  Although parties selecting arbitration are at liberty to

select the rules governing resolution of the dispute, *see Volt Information Sciences, Inc. v. Board

of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989), the FAA requires that choice-

of-law clauses in arbitration agreements not be read to defeat an agreement to arbitrate.

*Mastrobuono*, 514 U.S. at 58-61.  In *Mastrobuono* the Court held that even though the parties in

their arbitration agreement chose New York law and New York law barred arbitrators from

awarding punitive damages, the arbitrator could award punitive damages.  *Id.* at 58-61.  As the

Court explained, at a minimum, a choice-of-law clause should not be read to limit arbitration.  A

choice-of-law clause selecting New York law, the Court reasoned, is more aptly read only to

"encompass substantive principles that New York courts would apply, but not to include special

rules limiting the authority of arbitrators.  Thus, the choice-of-law provision covers the rights and

duties of the parties, while the arbitration clause covers arbitration."  *Id.* at 64.  The Court held

that interpreting a choice-of-law provision to conflict with an arbitration provision—the very

interpretation plaintiffs press here—"untenable," *id.*, because it would violate a "cardinal

principle of contract construction:  that a document should be read to give effect to all its

provisions and to render them consistent with each other," *id.* at 63 (collecting New York

authorities).[9] And, to the extent a choice-of-law clause introduces ambiguity into an arbitration agreement, the FAA requires arbitration: "when a court interprets [ambiguous arbitration] provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Id.* at 62 (quoting *Volt*, 489 U.S. at 476).

While adjudicating the effect of the choice-of-law provision is thus properly a task for the arbitrator, the provision on which plaintiffs rely cannot correctly be read to reveal a clear intent to excise the parties' express arbitration agreement. That provision only incorporates statutory law that the state "***requires***" be incorporated into the parties' contract. (Compl. Ex. E, Molson Agreement ¶18(a) ("The laws, rules and regulations of the jurisdiction in which Distributor conducts its business are hereby incorporated in this Agreement to the extent that such laws, rules and regulations are required to be so incorporated and shall supersede any conflicting provision of this Agreement.").) Section 55-c(7)(c)'s anti-arbitration provisions are not of this type. Rather than requiring that beer distribution agreements *incorporate* a "no arbitration" provision, § 55-c purports to *bar* the inclusion of arbitration clauses in the agreement. *Compare* § 55-c(7)(c) ("No brewer or beer wholesaler may impose binding arbitration as a term or condition of an agreement"), with §55-c(5)(c) (mandating incorporation of certain statements into notices of termination).[10]

---

[9]     *See also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1200 (2d Cir. 1996) ("a choice-of-law provision may reasonably be read as merely a substitute for the choice-of-law analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship" (quotation from *Mastrobuono* omitted)).

[10]    What is more, even if the choice-of-law and arbitration provisions could be viewed correctly as conflicting, New York law requires that the specific arbitration provision control over the general choice-of-law provision. *See Travelers Indemnity Co. v. F & S London Pub, Inc*., 270 F. Supp. 2d 330, 333 (E.D.N.Y. 2003) ("It is black letter contract law that where there is inconsistency between a specific provision of a contract and a general provision of a

Moreover, as *Ryan* holds, the FAA preempts § 55-c's anti-termination provisions. As the Supreme Court has explained, "the FAA . . . actually 'withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'" *Mastrobuono*, 514 U.S. at 56 (quoting *Southland*, 465 U.S. at 10). Since New York lacks "the power" to mandate a judicial forum for the parties' dispute, § 55-c's anti-arbitration provisions cannot correctly be considered to be incorporated in the parties' agreement. *Id.* at 59-60; *see also Bondy's Ford, Inc. v. Sterling Truck Corp.*, 147 F. Supp. 2d 1283, 1290-91 (M.D. Ala. 2001) (rejecting argument that choice of state statutory scheme incorporated anti-arbitration statute preempted by FAA).

Thus, contrary to plaintiffs' suggestion, § 55-c's anti-arbitration provisions cannot be considered laws incorporated into the agreement that "supersede any conflicting provision of [the] Agreement" (Molson Agreement ¶18(a)). Because the FAA renders § 55-c's anti-arbitration provisions void, they are not "law" at all. *See Mastrobuono*, 514 U.S. at 59-60; *Bondy's*, 147 F. Supp. 2d at 1290 ("Alabama statutes that preclude arbitration in cases governed by the FAA are void and are not the law in Alabama."). And, as explained above, the "laws, rules and regulations" that the choice-of-law provision refers is properly understood to include only New York's *substantive* laws, rather than its attempt to limit arbitrations. *See Mastrobuono*, 514 U.S. at 58-63; *PaineWebber*, 81 F.3d at 1200.

---

contract . . . the specific provision controls." (internal quotation marks omitted)); *G.E. v. Compagnie Euralair*, 94 F. Supp. 527, 533 (S.D.N.Y. 1996) ("where there are general and specific provision relating to the same matter, the special provisions control, even if there is an inconsistency").

MILW_3012753

**IV.    If Necessary, the Arbitrator Can Resolve Whether the Dormant Commerce Clause Limits § 55-c's Purported Constraints on a Brewer's Interstate Consolidation of Distributors.**

As explained in part II, above, all questions relating to the scope of the arbitration should be resolved by the arbitrator.  Nevertheless, plaintiffs argue that this Court should reserve for itself a potential constitutional issue Coors identified in its arbitration demand—that the provisions of § 55-c "that require[] Coors to show a contemporaneous reduction in the number of Molson distributors in the state contiguous to New York offends the Dormant Commerce Clause of the United States Constitution, in that the Act impermissibly attempts to regulate the conduct of Molson and Coors beyond the boundaries of the state of New York."  (Compl. Ex. G, Coors' Demand for Arbitration against Spirit & Sanzone Distributors, Co., ¶ 14.)  Plaintiffs' argument is inconsistent with the FAA.

The Supreme Court has held that the FAA preserves the parties' selection of arbitration in favor of a judicial venue even when the arbitrator must apply federal law.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987).  As the Court has explained, "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the Act in controversies based on [federal] statutes."  *Shearson*, 482 U.S. at 226 (internal quotation marks omitted).  The principle applies equally to the question whether an arbitrator can decide if the Dormant Commerce Clause limits the application of § 55-c's substantive provision governing consolidation.

Nothing in the FAA's text constrains arbitrators' ability to decide constitutional issues involved in parties' disputes.  And none of the authorities on which plaintiffs rely supports their suggestion that a judicial suspicion of arbitration of constitutional issues survives the FAA.  At most, the authorities plaintiffs cite, such as *Alexander v. Gardner-Denver Co.*, 415 U.S. 36

18

(1974), and *Coppinger v. Metro-North Commuter Railroad*, 861 F.2d 33, 36 (2d Cir. 1988), stand for the unremarkable proposition that an arbitrator's decision will not preclude a party from pressing statutory or constitutional claims that are beyond the arbitration's scope or for which Congress assigned plenary power to courts to secure statutory compliance.[11]

Nor does Fed. R. Civ. P. 5.1's requirement—that federal court litigants notify state officials when those litigants call into question the constitutionality of a state statute—provide any grounds for staying the parties' arbitration. *See also* 28 U.S.C. § 2403. Nothing about the arbitrability of § 55-c's application to the parties' dispute follows from the fact that Congress has afforded states an opportunity to defend their statutes when called into question in federal court proceedings. Given the private and non-precedential nature of arbitrator decisions, this is unsurprising.

Plaintiffs' suggestion that the potential Dormant Commerce Clause issue must be reserved for a court in order to ensure the presentation of "all relevant facts" (Pls.' Br. 33) is similarly unsupported by any FAA jurisprudence. Nor is there any support for plaintiffs' contention that the parties' agreement to arbitrate should be ignored because a "judicial finding" that § 55-c's consolidation provision cannot have extra-territorial effect "will have a dramatic effect on the beer industry." (*Id.*) Again, the Supreme Court's FAA jurisprudence dispatched long ago with contentions, like these, that arbitration is inferior to judicial resolution. *See Shearson*, 482 U.S. at 226.

---

[11]    The other cases on which plaintiffs rely are equally inapposite. *See Benjamin v. Traffic Executive Ass'n E. R.R.*, 869 F.2d 107 (2d Cir. 1989) (giving collateral estoppel effect to arbitration board decision applying federal statutory law); *Gonzalez v. Shanker*, 399 F. Supp. 858 (S.D.N.Y. 1975) (holding that 42 U.S.C. § 1983 does not require plaintiff to exhaust contractual grievance procedures before commencing civil rights claim for harassment and discrimination).

## <u>CONCLUSION</u>

Coors respectfully requests that the Court deny plaintiffs' request for a stay of arbitration

and instead dismiss or stay these proceedings in favor of arbitration.

Dated:  January 28, 2008
New York, New York

<div style="margin-left:40%">

/s/ Robert A. Scher
Robert A. Scher (RS 2910)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474

Jon P. Christiansen
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-5557

Attorneys for Defendant Coors Brewing
Company

</div>

MILW_3012753