UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
SPIRIT & SANZONE DISTRIBUTORS CO.,
INC., and SALAMANCA-AREA BEVERAGE
COMPANY INC.,

             Plaintiffs,        **MEMORANDUM and ORDER**

   - against -           08 civ. 0251 (LLS)

COORS BREWING COMPANY,

             Defendant.
- - - - - - - - - - - - - - - - - -X

A former Molson beer supplier gave each plaintiff the exclusive right to distribute Molson beer products to retailers in specified New York counties. The distribution agreements were ultimately assigned, through intermediate transactions, to defendant Coors Brewing Company ("Coors"), who now supplies Molson beer to plaintiffs. Each distribution agreement consists of a prior contract and a "Molson Amendment." The Molson Amendments contain identical clauses (quoted below) which require any and all disputes between Coors and each plaintiff to be resolved by arbitration before the American Arbitration Association ("AAA"), in accordance with the AAA Commercial Arbitration Rules.

Coors now wishes to terminate those distribution agreements, and has commenced AAA arbitration proceedings against plaintiffs Spirit & Sanzone Distributors Co., Inc.

("Sanzone") and Salamanca-Area Beverage Company Inc. ("Salamanca").[1]

Sanzone and Salamanca seek an injunction staying the arbitrations and a declaration that Coors cannot terminate the agreements. Such an injunction is appropriate, they assert, for several reasons. <u>First</u>, plaintiffs claim that the arbitration clauses are unenforceable because the prior Molson supplier who required them to sign the Molson Amendments did not have the "good cause" required by New York Alcoholic Beverage Control ("ABC") Law § 55-c to modify the prior contracts (which contained no arbitration provisions). <u>Second</u>, plaintiffs allege that several provisions of N.Y. ABC Law § 55-c, which are incorporated in the agreements by reference, conflict with and supersede the arbitration clauses. <u>Third</u>, plaintiffs argue that an arbitrator does not have the authority to rule on Coors' assertion that N.Y. ABC Law § 55-c violates the Dormant Commerce Clause of the U.S. Constitution.

Coors argues that all those claims, including issues of the validity of the arbitration clauses or the authority of arbitrators, must be decided by an arbitrator, not this Court. The arbitration clauses: (1) incorporate AAA

---

[1]     <u>Coors Brewing Company v. Spirit & Sanzone Distributors Co., Inc.</u> (AAA case no. 13 155 02713 07) and <u>Coors Brewing Company v. Salamanca-Area Beverage Company Inc.</u> (AAA case no. 13 155 02714 07).

Commercial Arbitration Rules which empower arbitrators to rule on their own jurisdiction, including the existence, scope, or validity of arbitration clauses; and (2) provide that "[a]ny and all" disputes shall be submitted to AAA arbitration. Coors argues that under the Second Circuit's decision in Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205 (2d Cir. 2005), those provisions of the arbitration clauses delegate the issue of arbitrability to an arbitrator.

Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, provides that upon being satisfied that the issues involved in a suit are "referable to arbitration under an agreement in writing for such arbitration", the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."

1.

The distribution agreements are governed by the FAA. Although there is a presumption under the FAA that courts should decide the issue of arbitrability, that issue may be referred to an arbitrator if "the parties have a sufficient relationship to each other and to the rights created under

the agreement", Contec, 398 F.3d at 209, and "'there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.'" Id. at 208 (quoting italics in original, and citing cases).

In Contec, the Second Circuit construed an agreement to arbitrate "in accordance with the Commercial Arbitration Rules of the American Arbitration Association", and stated:

> We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.

Id. (citing cases). In addition, a clause referring "any and all" controversies to arbitration is "inclusive, categorical, unconditional and unlimited" and it is a "broad grant of power to the arbitrators" which shows "that the parties intended to arbitrate issues of arbitrability." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199-1200 (2d Cir. 1996).

Plaintiffs signed Molson Amendments containing arbitration clauses, and there is no claim that they did so under duress, coercion, or protest. The arbitration clauses, which are identical, provide:

> Any and all disputes between Distributor and the
> Company or its agent, Coors, except nonpayment of
> Distributor's account, including without
> limitation a dispute as to whether the Company
> has grounds to terminate this Agreement, which
> disputes are not resolved by Mediation, shall be
> submitted to binding arbitration in the city
> nearest to Distributor in which there is a
> regional office of the American Arbitration
> Association, before a single arbitrator, in
> accordance with the Commercial Arbitration Rules
> and procedures of the American Arbitration
> Association.

Molson Amendment § 6.2.

> AAA Commercial Arbitration Rule 7 states:

> (a) The arbitrator shall have the power to rule
> on his or her own jurisdiction, including any
> objections with respect to the existence, scope
> or validity of the arbitration agreement.

> (b) The arbitrator shall have the power to
> determine the existence or validity of a contract
> of which an arbitration clause forms a part.

> Those provisions satisfy the conditions of Contec.

2.

Plaintiffs cite Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974) and several cases which rely on Gardner-Denver for the proposition that an arbitrator does not have the authority to rule on Coors' argument that N.Y. ABC Law § 55-c violates the Dormant Commerce Clause. That view no longer prevails.

In holding that a claim brought under the Age Discrimination in Employment Act of 1967 can be subjected to compulsory arbitration, the Supreme Court stated that the "mistrust of the arbitral process" expressed in Gardner-Denver "has been undermined by our recent arbitration decisions" and it is "well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 34 n.5 (1991)(quoting and citing cases)(quotation marks omitted). The Gilmer Court also distinguished "the Gardner-Denver line of cases" because "those cases were not decided under the FAA." Id. at 35.

3.

The distribution agreements contain clauses which each provide:

> The laws, rules and regulations of the jurisdiction in which Distributor conducts its business are hereby incorporated in this Agreement to the extent that such laws, rules and regulations are required to be so incorporated and shall supersede any conflicting provision of this Agreement.

Plaintiffs claim that those clauses incorporate into

the distribution agreements N.Y. ABC Law § 55-c(7)(c) (no beer supplier "may impose binding arbitration of any issue as a term or condition of an agreement"), § 55-c(11) (§ 55-c's requirements "may not be altered, waived or modified by written or oral agreement in advance of a bona fide case and controversy arising under a written agreement"), and § 55-c(6) (a beer distributor "may maintain a civil action in a court of competent jurisdiction" if a beer supplier fails to comply with the provisions of § 55-c). Plaintiffs assert that the distribution agreements thus specifically accept that the New York statutory bar against pre-dispute arbitration clauses conflicts with and supersedes the agreements' arbitration provisions. That poses the issue: who decides which of the N.Y. ABC Law, or the arbitration clauses, prevails? The answer lies in the FAA.

At least to the extent of placing the decision in the hands of the arbitrators, the FAA preempts the provisions of N.Y. ABC Law § 55-c which, according to plaintiffs, conflict with the arbitration clauses. Preston v. Ferrer, No. 06-1463, 552 U.S. ____, slip. op. at 5 (Feb. 20, 2008)("The FAA's displacement of conflicting state law 'is now well established,' and has been repeatedly reaffirmed." (quoting and citing cases)); John G. Ryan, Inc. v. Molson USA, LLC, No. 05 civ. 3984 (NGG)(JMA), 2005 WL 2977767

(E.D.N.Y. Nov. 7, 2005)(Garaufis, J.)(enforcing arbitration clause contained in a Molson Amendment and holding that FAA § 2 preempts the provisions of N.Y. ABC Law § 55-c which purport to invalidate that agreement to arbitrate).

In its most recent FAA decision, <u>Preston v. Ferrer</u>, the Supreme Court construed a contract with clauses granting priority to law to the extent legally necessary,[2] applying California law,[3] and providing for arbitration of "any dispute . . . relating to the terms" of the contract in accordance with AAA rules. <u>Preston</u>, slip. op. at 2, 13. Respondent Ferrer argued that under those clauses the California Labor Commissioner had exclusive jurisdiction over the issue of the validity of the contract. <u>Id.</u> at 13. However, the United States Supreme Court stated in its February 20, 2008 decision:

> The instant petition presents the following question: Does the FAA override not only state statutes that refer certain state-law controversies initially to a judicial forum, but also state statutes that refer certain disputes initially to an administrative agency? We hold

---

[2] "A separate saving clause provides: 'If there is any conflict between this agreement and any present or future law,' the law prevails over the contract 'to the extent necessary to bring [the contract] within the requirements of said law.'" <u>Preston</u>, slip. op. at 13 (alterations in <u>Preston</u>)(quoting contract).

[3] The "contract also contains a choice-of-law clause, which states that the 'agreement shall be governed by the laws of the state of California.'" <u>Preston</u>, slip. op. at 13 (quoting contract).

today that, when parties agree to arbitrate all
questions arising under a contract, state laws
lodging primary jurisdiction in another forum,
whether judicial or administrative, are
superseded by the FAA.

[<u>Id.</u> at 1-2]

                        * * *

     When parties agree to arbitrate all
questions arising under a contract, the FAA
supersedes state laws lodging primary
jurisdiction in another forum, whether judicial
or administrative.

[<u>Id.</u> at 12]

                        * * *

     Preston and Ferrer's contract, as noted,
provides for arbitration in accordance with the
AAA rules. One of those rules states that "[t]he
arbitrator shall have the power to determine the
existence or validity of a contract of which an
arbitration clause forms a part." The
incorporation of the AAA rules, and in particular
Rule 7(b), weighs against inferring from the
choice-of-law clause an understanding shared by
Ferrer and Preston that their disputes would be
heard, in the first instance, by the Labor
Commissioner. Following the guide *Mastrobuono*
provides, the "best way to harmonize" the
parties' adoption of the AAA rules and their
selection of California law is to read the latter
to encompass prescriptions governing the
substantive rights and obligations of the
parties, but not the State's "special rules
limiting the authority of arbitrators."

<u>Id.</u> at 15, quoting <u>Mastrobuono v. Shearson Lehman Hutton,</u>

<u>Inc.</u>, 514 U.S. 52, 63-64 (1995).

     Here, the "substantive rights and obligations of the

parties" have to do with the business relationships between beer suppliers and distributors, and the conditions for termination of their contracts (the underlying dispute in this case), while the State's restraints on pre-dispute arbitration agreements are collateral and remedial in nature, analogous to "special rules limiting the authority of arbitrators."

4.

Plaintiffs' motion for an injunction staying the arbitrations is denied.

The motion to stay this action pending the completion of the AAA arbitration proceedings is granted. The action is stayed until counsel notify the Court that the AAA arbitration proceedings between defendant Coors and plaintiffs Sanzone (AAA case no. 13 155 02713 07) and Salamanca (AAA case no. 13 155 02714 07) are completed.

So Ordered.

Dated:  New York, New York
        February 29, 2008

                                        *Louis L. Stanton*
                                        _____
                                        LOUIS L. STANTON
                                        U. S. D. J.